UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR JOHNSON,

       Plaintiff,

                          CASE NO. 2:08-CV-10442
                          JUDGE DENISE PAGE HOOD
                          MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

NANCY YIRKO, M.A., and
MICHAEL BURGESS, D.O.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Doc. Ent. 18), DEFENDANTS' MOTION TO COMPEL (Doc.
Ent. 19) and DEFENDANTS' MOTION TO DISMISS (Doc. Ent. 20)**

**Table of Contents**

I.      **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    A.     **Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    B.     **Pending Motions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    C.     **Fed. R. Civ. P. 56** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    D.     **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
          1.    **Plaintiff's claims for injunctive and/or declaratory relief against Burgess and/or
                Yirku based upon the treatment he received at the Jackson County Jail are moot.**
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          2.    **Plaintiff's claims against Burgess and Yirko in their official capacities for monetary
                relief are barred by the Eleventh Amendment.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
          3.    **With regard to plaintiff's claims against Burgess and Yirko in their personal
                capacities for monetary relief, the Court should grant defendants' Rule 56 motion
                for summary judgment.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
          4.    **If the Court disagrees with the foregoing recommendation, then it should grant
                defendants' Rule 37(a)(5) motion to compel to the extent it seeks responses to the
                July 23, 2008 interrogatories.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
          5.    **If the Court disagrees with my recommendation that the Rule 56 motion should be
                granted, the Court should also deny defendants' Rule 41(b) motion to dismiss.** . . **26**

III.   **NOTICE TO PARTIES REGARDING OBJECTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **34**

I.    **RECOMMENDATION:**  The Court should grant defendants' Burgess and Yirku's[1]

August 21st Rule 56 motion for summary judgment regarding plaintiff's claim of deliberate

indifference (Doc. Ent. 18).  *See* Section II.C.3.  If the Court agrees with this recommendation,

then it should deny defendants' September 2nd motion to compel responses to interrogatories

(Doc. Ent. 19) and September 5th motion to dismiss for failure to prosecute (Doc. Ent. 20) as

moot.

        If the Court disagrees with my recommendation that the Rule 56 motion should be

granted, then it should enter an order granting defendants' motion to compel to the extent it

seeks responses to the July 23, 2008 interrogatories.  *See* Section II.C.4. Also, it should enter an

order denying defendants' motion to dismiss but providing that plaintiff update the Court with

his address changes on a timely basis.  *See* Section II.C.5.

II.    **REPORT:**

A.    **Background**

        On February 9, 2005, Arthur Johnson was sentenced to one to four years for a violation

of Mich. Comp. Laws § 333.7403(2)(a)(v).  Plaintiff was paroled on July 3, 2007.  *See*

www.michigan.gov/corrections, "Offender Search."

        At some point, plaintiff was placed in jail for a parole violation.  See Doc. Ent. 18-4 at

13.  He filed a verified complaint on January 31, 2008, while he was confined at the Jackson

County Jail.  Defendants are Nancy Yirko, M.A., and Michael Burgess, D.O., and they are sued

in their personal and official capacities.  Doc. Ent. 1 at 1, 3.  Plaintiff seeks $4.5 million in

monetary relief and an order requiring defendants "to change the way they handle and treat

_____

        [1]This defendant's name is spelled "Yirko" in the March 6th answer (Doc. Ent. 13) and
"Yirku" in the August 21st motion for summary judgment (Doc. Ent. 18).

prisoner[] medication and the level of medica[l] care they receive[.]" Doc. Ent. 1 at 4.

On February 21, 2008, Judge Hood referred this case to me to conduct all pretrial matters. Doc. Ent. 8. Defendants Burgess, Coordinated Care, P.L.L.C.,[2] and Yirko filed an answer to the complaint,[3] affirmative defenses and a demand for jury trial on March 6, 2008. Doc. Ent. 13.

On March 27, 2008, plaintiff filed a "motion asking the Court for a 60 day delay[.]" Doc. Ent. 14. On May 20, 2008, I entered an order construing the filing as a motion to stay proceedings and denying the motion. Doc. Ent. 16.[4]

On November 14, 2008, plaintiff informed the Court that he could be reached at the Charles Egeler Reception and Guidance Center Annex (RGC), where he will be until January 26, 2009. Doc. Ent. 23.[5] Although in this filing plaintiff represents to the Court that January 26, 2009 is the maximum date of his term with the MDOC (Doc. Ent. 23), it also appears that plaintiff's supervision discharge date is March 20, 2009. *See* www.michigan.gov/corrections, "Offender Search." As of the filing of this report, plaintiff is still assigned to RGC.

_____

[2]The Court assumes that Coordinated Care, P.L.L.C., is defendants' employer. This is somewhat confirmed by defendants' assertion that "Burgess contracts with the Jackson County Jails to provide medical treatment for prisoners, if needed. His clinics are staffed by nurses and, in particular, . . . Yirku was on staff at the relevant time alleged." Doc. Ent. 18 at 13. In any event, based on plaintiff's list of defendants (Doc. Ent. 1 at 1, 3), it is not clear that he intended to name Coordinated Care as a defendant.

[3]As to plaintiff's claims, defendants assert that "without additional specifics they are unable to admit or deny this allegation." Doc. Ent. 13 at 2-3.

[4]My May 20th order was not entered on the docket until May 27th. This appears to be the May 27th letter that plaintiff allegedly did not receive until May 30, 2008. Doc. Ent. 17 at 1.

[5]According to plaintiff, he is "with the M.D.O.C[.] by [his] [own] request[.]" Doc. Ent. 23.

**B.      Pending Motions**

At this time, there are three motions pending before the Court.  On August 21, 2008 defendants filed a motion for summary judgment as to plaintiff's claim of deliberate indifference. Doc. Ent. 18.  Therein, defendants contend that "Plaintiff['s] claims only raise matters of medical judgment or purported negligence, which do not constitute deliberate indifference[.]" Doc. Ent. 18 at 3 ¶ 6a.  They further contend that "Plaintiff completely fails to show that Dr. Burgess or Nurse Yirku had a sufficiently culpable state of mind; and therefore, this claim fails to meet the subjective element of a deliberate indifference claim."  Doc. Ent. 18 at 3 ¶ 6b.  *See also* Doc. Ent. 18 at 10.

On September 2, 2008, defendants filed a motion to compel plaintiff's responses to interrogatories.  Doc. Ent. 19.  On September 5, 2008, defendants filed a motion to dismiss for failure to prosecute.  Doc. Ent. 20.  Additionally, on September 15, defendants filed a supplementation to their motion to dismiss for failure to prosecute.  Doc. Ent. 21.[6]

My October 10, 2008 order set the response due date for the August 21st, September 2nd and September 5th motions for November 10, 2008.  Doc. Ent. 22.  To date, plaintiff has not filed a response.

**C.      Fed. R. Civ. P. 56**

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[6]This, too, is filed on behalf of Coordinated Care PLLC.  Doc. Ent. 21.

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of [the] essential elements
> of a cause of action or defense asserted by the parties, and would necessarily
> affect [the] application of appropriate principle[s] of law to the rights and
> obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867,

872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a

motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . .

and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson*

*Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[7]

The movant bears the burden of demonstrating the absence of all genuine issues of

material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  The moving

party need not produce evidence showing the absence of a genuine issue of material fact.

Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out

to the district court – that there is an absence of evidence to support the non-moving party's

case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges

that burden, the burden shifts to the non-moving party to set forth specific facts showing a

genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his

pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to

---

[7]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)
and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support
of this statement.

respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[8]  "[A] verified complaint . . .

would have the same force and effect as an affidavit and would give rise to genuine issues of

material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting

and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would

be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to

the matters stated therein."  Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696,

1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required);

*Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished)

(conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v.

United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412

F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient."

*Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the

United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986),

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  *Id.* at 246-250 (citations

omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 586-587 (1986).  The standard for summary judgment mirrors the

---

[8]Plaintiff signed his complaint under penalty of perjury.  *See* Doc. Ent. 1 at 4; 25 U.S.C. §
1746 ("Unsworn declarations under penalty of perjury").

standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250.

Consequently, a non-movant must produce evidence that would be sufficient to require

submission to the jury of the dispute over the fact.

**D.     Analysis**

**1.      Plaintiff's claims for injunctive and/or declaratory relief against Burgess and/or
        Yirku based upon the treatment he received at the Jackson County Jail are moot.**

As previously noted, plaintiff seeks an order requiring defendants "to change the way

they handle and treat prisoner[] medication and the level of medica[l] care they receive[.]" Doc.

Ent. 1 at 4.  To the extent plaintiff seeks declaratory and/or injunctive relief based upon Burgess

and/or Yirku's actions which occurred at the Jackson County Jail, plaintiff's transfer from that

institution makes these claims moot.  *See Dellis v. Corrections Corp. of America*, 257 F.3d 508,

510 n.1 (6th Cir. 2001) ("Plaintiff also requested injunctive and declaratory relief in his

complaint; however, because he is no longer incarcerated in either Hardeman County

Correctional Facility or Whiteville Correctional Facility, these prayers for relief are moot.");

*Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and

injunctive relief his claims are now moot as he is no longer confined to the institution that

searched his mail."); *Abdur-Rahman v. Michigan Department of Corrections*, 65 F.3d 489, 491

(6th Cir. 1995) ("Rahman has been transferred from the State Prison of Southern Michigan in

Jackson, Michigan.  Therefore, because of Rahman's transfer, his request for injunctive relief is

now moot."); *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982) ("the injunctive relief sought is

now moot since Goar is no longer imprisoned."); *Tanney v. Boles*, 400 F.Supp.2d 1027, 1039 &

n.9 (E.D. Mich. 2005) (Roberts, J.) ("The Sixth Circuit has consistently found that, like a claim

for injunctive relief, an inmate's claim for declaratory relief based on prison conditions or

treatment becomes moot once the inmate is transferred or released."). *See also Goldsborough v. Carlson*, No. 88-5656, 1988 WL 125368, *1 (6th Cir. Nov. 25, 1988) ("A prisoner's claims for injunctive relief are mooted upon that prisoner's release or transfer.") (citing cases).

2.    **Plaintiff's claims against Burgess and Yirko in their official capacities for monetary relief are barred by the Eleventh Amendment.**

As previously noted, plaintiff sues defendants Yirko and Burgess in their personal and official capacities. Doc. Ent. 1 at 1, 3. Plaintiff seeks $4.5 million in monetary relief.

A private entity employed by the state to provide medical services to its prison inmates may be sued under §1983 as one acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 54 (1988).[9] *See also Leeks v. Cunningham*, 997 F.2d 1330 (11th Cir. 1993).[10] Defendants have asserted that "Burgess contracts with the Jackson County Jails to provide medical treatment for prisoners, if needed. His clinics are staffed by nurses and, in particular, . . . Yirku was on staff at the relevant time alleged." Doc. Ent. 18 at 13.

Given that Burgess and Yirku were acting under color of state law, it is important to note

---

[9] In *West*, the Supreme Court considered "whether a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts 'under color of state law,' within the meaning of 42 U.S.C. § 1983, when he treats an inmate." *West*, 487 U.S. at 43. The Supreme Court held that "[r]espondent, as a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State." *West*, 487 U.S. at 54. The Court concluded that "respondent's delivery of medical treatment to West was state action fairly attributable to the State, and that respondent therefore acted under color of state law for purposes of § 1983." *West*, 487 U.S. at 57.

[10] "A private physician such as appellant who is under contract to provide obligatory medical services to a county jail is considered to be acting under color of state law for § 1983 purposes." *Leeks*, 997 F.2d at 1333 n.3 (citing *West v. Atkins*, 487 U.S. 42 (1988) and *Carswell v. Bay County*, 854 F.2d 454 (11th Cir.1988)).

that the Eleventh Amendment bars suits against state officials sued in their official capacity.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  *See also*, *Hafer v. Melo*, 502

U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).  Here, defendants

Burgess and Yirku are state officials, and plaintiff's claims against them in their official

capacities for monetary damages are therefore barred by the Eleventh Amendment.

**3.     With regard to plaintiff's claims against Burgess and Yirko in their personal capacities for monetary relief, the Court should grant defendants' Rule 56 motion for summary judgment.**

**a.**     The statement of facts in plaintiff's January 31, 2008 complaint provides, in its entirety:

> Insulin is stored in [a] syringe that is not approved by [the] F.D.A[.]  Insulin is handled in unsanitary ways that expose it to various types of germs and viruses from the hands of untrained person[n]el [(]dates 9/15-07 1-08 no change[)].  The nurse puts insulin in syringe unde[r] doctor[']s supervision and orders.  I have also been denied oral medication for diabetes along with my insulin and because of this my blood [sugars] have escalated to [dangerously] high levels that can resu[l]t in coma or death and injury to [vital] organs[.] [T]he way insulin is stored it can spoil and cause serious injury.  Even death.

Doc. Ent. 1 at 4.  Considering that "...the allegations of [a] pro se complaint [are held] to less

stringent standards than formal pleadings drafted by lawyers..." *Haines v. Kerner*, 404 U.S. 519,

520 (1972), this single paragraph that comprises plaintiff's January 31, 2008 complaint is most

reasonably construed as an attempt to bring an Eighth Amendment claim of deliberate

indifference to a serious medical need.

In their August 21st motion, defendants admit that they "provided treatment for Plaintiff,

when medically necessary, while he was incarcerated in the Chanter Road Facility jail for parole

violations.  However, they assert, "[o]nce Plaintiff left the jail, [Burgess and Yirku] no longer

saw to Plaintiff's medical needs."  Doc. Ent. 18 at 13.  Defendants characterize plaintiff's

complaint as "purportedly alleging that the way that Dr. Burgess and Nurse Yirku at the Chanter

9

Rd. Jail handle insulin for diabetic patients is unsafe, and could lead to injury or death." It is defendants' position that plaintiff has not shown how Burgess and/or Yirku were deliberately indifferent "in their care of him during his stay at the Chanter Rd. Jail." Doc. Ent. 18 at 14.

Defendants contend that plaintiff "has not demonstrated that any of the care administered by these defendants constituted a serious medical need on his part." Defendants also contend that plaintiff "fails [to] show that the instant Defendants, allegedly being aware of [his serious medical] need, acted with deliberate indifference to it." In defendants's opinion, plaintiff cannot contradict Burgess and/or Yirku's simple exercise of sound medical judgment. Doc. Ent. 18 at 14.

Defendants have provided the Court with copies of Jackson County Jail medical records. Doc. Entries 18-2, 18-4 (Exhibit B). These records consist of eighteen (18) incident reports dated anywhere from December 9, 2004 to December 31, 2007. Doc. Ent. 18-4 (Exhibit B). Relying upon these records, defendants contend that Johnson "is a diabetic, and was a particularly non-compliant patient while an inmate at the Chanter Rd. Jail, with regard to management of his diabetes." Doc. Ent. 18 at 14-15. It is defendant's position that "[a]ny management of Mr. Johnson's diabetes or change in his medication was simply an exercise of medical judgment, and did not rise to the level of deliberate indifference." Doc. Ent. 18 at 15.

Ultimately, defendants seek entry of an order granting their motion for partial summary judgment and dismissing with prejudice plaintiff's claims of deliberate indifference. Doc. Ent. 18 at 4; *see also* Doc. Ent. 18 at 22.[11]

_____

[11]Although this motion mentions "partial summary judgment" in at least two places (Doc. Ent. 18 at 4, Doc. Ent. 18 at 21), the Court assumes this is a typographical error. First, another page of the motion refers to "Plaintiff Ernest Moore" (Doc. Ent. 18 at 13), which is likely the

**b.** The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials,

> who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

---

plaintiff in *Moore v. Tanner*, Case No. 2:07-CV-10442, in which there were motions for partial summary judgment (Doc. Entries 72 and 78). In fact, the last page of Exhibit D (Doc. Ent. 18-6 at 2) is a copy of page 2 of Ernest Lee Moore's MDOC Presentence Investigation. Second, defendants characterize plaintiff's complaint as attempting to bring an Eighth Amendment deliberate indifference to a serious medical need claim, and this is the claim regarding which they seek summary judgment.

c.        The first basis of defendants' motion should be addressed under Fed. R. Civ. P. 12(b)(6).

Defendants argue that they "are entitled to summary judgment because plaintiff has alleged only

a presumed difference of opinion regarding medical judgment[,]" Doc. Ent. 18 at 15-19.  In other

words, defendants state, Johnson "merely alleges a difference in medical judgment but does not

state a cause of action for deliberate indifference under 42 U.S.C. § 1983."  Doc. Ent. 18 at 15.

Defendants also assert that plaintiff's complaint does not "allege sufficient facts to satisfy

the first element [of a Section 1983 claim]."  Doc. Ent. 18 at 15-16.  Defendants assert that "[t]he

facts and evidence in this case do not demonstrate that Dr. Burgess and/or Nurse Yirku exhibited

deliberate indifference to Plaintiff's medical needs."  Instead, they argue, they "provided

thorough medical treatment to Plaintiff by providing examinations, properly acting in accordance

with the diagnosis, timely and appropriately responding to medical requests, and prescribing the

appropriate medications and/or treatments."  Doc. Ent. 18 at 16.

Furthermore, defendants allege that "[t]he facts presented by Plaintiff in this action, even

if true, do not constitute a claim pursuant to 42 U.S.C. § 1983."  Doc. Ent. 18 at 17-18.

Additionally, defendants state that "[p]laintiff's allegations do not set forth a claim for

'deliberate indifference to a serious medical need[,]'" and "Johnson is attempting to

'constitutionalize' his personal difference of medical opinion between himself and the

Defendants."  Doc. Ent. 18 at 18.  Furthermore, defendants assert that "Plaintiff's conclusory

and unsupported allegations <u>fail</u> to rise to a level of legally-cognizable 'deliberate

indifference[,]'" and "[t]aken at his own words, the Plaintiff is alleging an action that sounds in

presumed medical malpractice; he has <u>failed</u> to even meet the substantive and procedural

requirements of such a claim."  Doc. Ent. 18 at 19.

12

Again relying upon the Jackson County Jail medical records (Doc. Ent. 18-4), defendants claim:

> Plaintiff's MDOC medical chart reveals that Plaintiff received regularly requested medical treatment. . . . The medical records clearly demonstrate that they did not act with deliberate indifference to Plaintiff's serious medical needs as alleged, but provided consistent and appropriate medical treatment within sound medical judgment.  The medical records demonstrate that Dr. Burgess and Ms. Yirku provided the appropriate testing and examinations along with the corresponding treatment for all of Plaintiff's complaints.

Doc. Ent. 18 at 19.

In the end, defendants assert that Johnson's "allegations of deliberate indifference are merely allegations of a difference in medical opinion and therefore are not enough for a claim under 42 U.S.C. § 1983, according to the aforementioned facts of this case and cited case law." Doc. Ent. 18 at 19.

Notwithstanding defendants' reference to the medical records (Doc. Ent. 18 at 19) and reference to "evidence" (Doc. Ent. 18 at 16, 21), a test of plaintiff's allegations, which in this case are primarily located in plaintiff's complaint, is really an issue to be evaluated under Fed. R. Civ. P. 12(b)(6).  This rule provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  This characterization of defendants' first argument is supported by defendants' conclusion that the Court

> . . . must dismiss Plaintiff's claims of deliberate indifference because those allegations against Defendants Dr. Burgess and Nurse Yirku are inappropriate and insufficient to support such a cause of action.  The Plaintiff cannot possibly make any factual showing that would support any cause of action beyond Plaintiff's pleadings, inadequate as they are.

Doc. Ent. 18 at 21.

**d.**     Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections.  As
to how defenses should be presented, the rule states in pertinent part:

> Every defense to a claim for relief in any pleading must be asserted in the
> responsive pleading if one is required.  But a party may assert the following
> defenses by motion:  . . . (6) failure to state a claim upon which relief can be
> granted[.]

Federal Rules of Civil Procedure 12(b)(6).  "If, on a motion asserting the defense numbered (6)

to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters

outside the pleading are presented to and not excluded by the court, the motion shall be treated as

one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed.

R. Civ. P. 12(b).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

1964-1965 (2007) (citations and quotations omitted).  "Factual allegations must be enough to

raise a right to relief above the speculative level, . . . on the assumption that all the allegations in

the complaint are true[.]"  *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (citations and quotations

omitted).  It is not enough that "the pleadings [leave] open the possibility that a plaintiff might

later establish some 'set of [undisclosed] facts' to support recovery."  *Id*. at 1968.  "[O]nce a

claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint."  *Id*. at 1970.  "[W]e do not require heightened fact

14

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.  Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal.  *Id.*

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true.  *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true.  *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).  A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A James W. Moore, Moore's Federal Practice ¶ 12.07 (2d ed. 1995).

**e.**    Here, it is clear that plaintiff has *alleged* the objective prong - the serious medical need - of his Eighth Amendment claim.  The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection.  *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 349.  The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"  *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

As previously noted, defendants assert that "[p]laintiff has not demonstrated that any of the care administered by these defendants constituted a serious medical need on his part."  Doc.

15

Ent. 18 at 14.  Also, defendants appear to argue that at no time did a serious medical condition exist.  Doc. Ent. 18 at 20.  However, while there may be a valid debate regarding plaintiff's actual need for insulin therapy, the complaint nonetheless states, "I have also been denied oral medication for diabetes along with my insulin and because of this my blood [sugars] have escalated to [dangerously] high levels that can [result] in coma or death and injury to [vital] organs and the way insulin is stored it can spoil and cause serious injury.  Even death."  Doc. Ent. 1 at 4.  Therefore, the Court should conclude that plaintiff has alleged the objective prong of an Eighth Amendment deliberate indifference claim.

However, plaintiff has not alleged the subjective prong - deliberate indifference.  The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton."  *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard.  *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06.  Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847.

However, the official cannot be liable for risk of which he is unaware.  *Id*. at 837.  An "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  *Id*.  A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.  *Id*. at 843-44.  However, prison officials

16

may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *Id*. at 844-45.

"To prevail under the subjective component, a prisoner must allege specific incidents of deliberate indifference by prison officials." *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005) (on review of a dismissal pursuant to 28 U.S.C. § 1915A(b)(1), the Court stated that "the complaint and attached exhibits indicate that prison officials were aware of Talal's allergy."). *See also Wilson v. Hofbauer*, 113 Fed.Appx. 651, 653 (6th Cir. 2004) (on appeal from the district court's dismissal of plaintiff's complaint for failure to state a claim, the Court stated, "[a]lthough Wilson summarily alleged that the non-smoking policy was not fully enforced, Wilson failed to allege a single incident where a named defendant was aware that a smoking violation was occurring, but did not act.").

Even assuming that the plaintiff's claims in his complaint are true - the insulin is stored in a non-FDA approved syringe, insulin is handled in unsanitary ways, "[t]he nurse puts insulin in syringe unde[r] doctor[']s supervision and orders[,]" he has been denied oral diabetic medication and insulin (which has resulted in dangerously blood sugar levels), and the manner in which insulin stored can result in spoilation and serious injury - he does not mention the defendants' *knowledge* of these risks.[12]

Consistent with my conclusion that plaintiff's complaint does not allege defendants' knowledge of the alleged risks, and in the absence of a response by plaintiff to this motion, the

---

[12]To be sure, in his July 16, 2008 filing, plaintiff states that deputies from the Jackson County Jail "are the ones who gave out insulin and know that it is predrawn into [syringes] that are not approved by [the] F.D.A. as storage [syringes]." Doc. Ent. 17 at 2.

Court should conclude that plaintiff is at most alleging a medical malpractice claim. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court[.]" *Estelle*, 429 U.S. at 107. As the Sixth Circuit has noted, "[d]eliberate indifference, however, does not include negligence in diagnosing a medical condition." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Estelle*, 429 U.S. at 106).[13]

**f.**      The second basis of defendants' motion should be analyzed under Fed. R. Civ. P. 56. Defendants' argument is that they "are entitled to summary judgment because plaintiff fails to support the subjective element of his Eighth Amendment claim[,]" Doc. Ent. 18 at 19-21.[14] According to defendant, "[t]he medical records demonstrate the opposite of wanton conduct[] by Defendants, and instead show continuous medical care and proper treatment as the result of appropriate examination, testing and medication." Doc. Ent. 18 at 19-20.

It is defendants' position that plaintiff has not shown that Burgess and Yirku "wantonly ignored a substantial risk of serious harm that existed[,]" and plaintiff has only "made conclusory, unsupported allegations of theoretically inappropriate actions[.]" Defendants

---

[13]In addition to *Sanderfer*, defendants rely upon *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322 (6th Cir. Apr. 4, 1997) and *Ward v. Smith*, No. 95-6666, 1996 WL 627724 (6th Cir. Oct. 29, 1996). Doc. Ent. 18 at 18; Doc. Entries 18-5, 18-6.

[14]This section assumes that the objective component of an Eighth Amendment claim has been satisfied, even though defendants mention that "at no time did such a [serious medical] condition exist." Doc. Ent. 18 at 20. *Preyor v. City of Ferndale*, 248 Fed.Appx. 636, **5 (6th Cir. 2007); *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

18

contend that the medical records "show continuous medical care and proper treatment by the health care providers at the Jackson County Jail."  Citing the medical records, defendants argue that "[b]ased upon the medical findings along with Plaintiff's subjective complaints, these Defendants made sound medical decisions regarding the course of treatment and plan."  Doc. Ent. 18 at 20.  Defendants contend that "[p]laintiff's allegations are unsupported, unsupportable and indeed they are <u>contradicted</u> by the medical records and the opinions of every involved health care provider."  Doc. Ent. 18 at 20-21.

Defendants go on to say that "[t]he only available evidence as a result of discovery in this cause indicates that Plaintiff's condition was properly assessed and treated."  Doc. Ent. 18 at 21.  Defendants conclude that "whether or not one finds any basis to dispute the treatment plan for this inmate patient, Plaintiff has failed to show that these Defendants had any subjective intent to act with deliberate indifference to his medical needs.  To the contrary, the medical records show a subjective intent by Dr. Burgess and Ms. Yirku to provide the proper medical treatment for Plaintiff's medical conditions."  Doc. Ent. 18 at 21.

A conclusion that defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need is supported by a review of the eighteen (18) Jackson County Sheriff Department Jail Incident Reports, several of which mention Burgess and some of which mention a "nurse."  Doc. Ent. 18-4.  The first two reports indicate that Dep. R. Townley gave plaintiff his insulin on December 9, 2004 and January 26, 2005.  Doc. Ent. 18-4 at 1-2.  On January 26th, Townley checked plaintiff's random blood sugar

(RBS),[15] and it was 514.  Townley called Burgess, who ordered "10 units of regular insulin along with his regular dose of 10 units NPH insulin."  Townley gave plaintiff the regular insulin.  Doc. Ent. 18-4 at 2.  According to Dep. Stallworth, Johnson refused his insulin on January 29, 2005, and Stallworth would inform the medical staff.  Doc. Ent. 18-4 at 3.  On February 6, 2005, Stallworth noted the fact that plaintiff did not take his insulin on the medicine sheet.  The medical staff was to be copied.  Doc. Ent. 18-4 at 4.

Approximately one year later, on February 11, 2006, while plaintiff was in booking, Dep. S. Walker noted that plaintiff stated he was an insulin dependent diabetic and "advis[ed] that he had not taken his insulin because he ran out, and did not have the money to buy any."  Burgess was called, and he directed that plaintiff be "give[n] insulin diet, no insulin tonight, have Nancy from Medical staff see [Johnson] in the morning."  Doc. Ent. 18-4 at 5.

On April 4, 2006, Sgt. Rice noted that plaintiff refused insulin around 4:30 p.m., and his RBS was 522.  Burgess advised that plaintiff be given 6 units of insulin, and plaintiff refused, allegedly stating that "that if he could not have what he wanted he did not want anything[.]"  Rice again informed Burgess of plaintiff's refusal of insulin, and Burgess recommended that Rice attempt to get plaintiff to take the 10 units.  According to the report, "Inmate Johnson finally agreed to take his 10 units [of insulin]."  Doc. Ent. 18-4 at 6.  On April 5, 2006, Dep. Baker noted that plaintiff did not want his RBS test and insulin.  Baker believed that plaintiff "should be evaluated by Med. staff in the morning."  Allegedly, a copy of the Jail Incident Report (JIR)

---

[15]"Random blood sugar (RBS) measures blood glucose regardless of when you last ate. Several random measurements may be taken throughout the day. Random testing is useful because glucose levels in healthy people do not vary widely throughout the day. Blood glucose levels that vary widely may indicate a problem. This test is also called a casual blood glucose test."  *See* http://diabetes.webmd.com/blood-glucose.

was forwarded to medical staff.  Doc. Ent. 18-4 at 7.  Notes on the April 4, 2006 report and the

5:00 a.m. incident report from the following day seem to indicate that Burgess saw plaintiff on

April 5, 2006.  Doc. Ent. 18-4 at 6-7.

Later that year, on September 8, 2006, Dep. Wood noted that "Johnson was very upset

[and] complained he did not receive any of his medication today."  According to Wood, plaintiff

stated that "he was going to make the med staff pay and the rest of the jail for not giving him

proper medical attention."  Wood advised the medical staff.  Doc. Ent. 18-4 at 8.  Then, on

December 15, 2006, Dep. Montgomery noted that plaintiff complied with a 6:00 a.m. request to

come and take a blood sugar check.  According to Montgomery, plaintiff's "dbl" was 77, and

"Inmate Johnson stated he did not want his insulin now or later and that his sugar level was

already low enough for the amount of food he is going to be able to eat at breakfast."

Montgomery "advised Inmate Johnson that if he changes his mind about taking his insulin to

notify the first shift officer prior to going to breakfast."  Apparently, this report was forwarded to

the medical staff.  Doc. Ent. 18-4 at 9.

Several months later, on August 26, 2007, Dep. Kellenberger checked plaintiff's RBS,

and it was 449.  Kellenberger informed A/Sgt. Broadworth, who contacted Burgess.  According

to the incident report, "Burgess advised to give inmate Johnson his normal dose of insulin along

with 5 additional units of R insulin.  Dr. Burgess also advised to have the med staff see inmate

Johnson in the morning."  According to the report, plaintiff was given 5 additional units of R

insulin and the report was forwarded to the medical staff.  Doc. Ent. 18-4 at 10.

A couple of weeks later, on September 15, 2007, while plaintiff was in booking, Deputy

D. Gillman noted that plaintiff's RBS was 447.  Gillman called Burgess who instructed Gillman

21

"to give inmate Johnson 5 units of regular insulin at that time and then to give 20 units of 70/20 at 1030 PM and 1030 AM."  Gilman's report notes that a "[n]urse will follow up in the morning[,]" and the insulin was given to plaintiff.  Doc. Ent. 18-4 at 11.  Two days later, on September 18, 2007, while plaintiff was in booking, Sgt. Stoetzel informed Burgess that plaintiff's RBS was 542, and "Burgess instructed [Stoetzel] to increase the insulin amount from 10 units to 15 units for the prescribed times."  The report notes that plaintiff's insulin was increased to "15u 70/30" and a copy of the incident report was given to the medical staff.  Doc. Ent. 18-4 at 12.

The following day, on September 19, 2007, Deputy D. Gillman noted that plaintiff would not take his RBS or insulin; Gillman called Burgess, who directed Gillman to get a witness and "ask Inmate Johnson if he is going to refuse his insulin from now on."  According to the report, "[w]ith deputy McKessy standing next to [Gillman], inmate Johnson stated that he would refuse the dose that the med staff is prescribing for him everyday.  He further stated that he wants to get his insulin dosage done on the 'sliding rule scale' or go back to prison."  According to Gilman, plaintiff stated that he would check his RBS each day.  Gilman's notes state: "Dr. Called.  Med Staff will talk to inmate Johnson in the morning."  A handwritten note on this report, the last line of which is illegible, indicates that plaintiff may be "daylight fasting;" states that plaintiff said he would restart taking his RBS; appears to state that plaintiff signed a refusal of all medications; and indicates that plaintiff's RBS was checked.  Doc. Ent. 18-4 at 13.

A few days later, on September 24, 2007, Dep. Shore noted that plaintiff requested a blood sugar check at approximately 9:30 p.m.  Apparently, plaintiff's level was 465.  According to Shore, "[t]here [were] no med sheets for any medication for [plaintiff] or a sheet to check his

22

blood sugar[,]" and "Inmate Johnson advised he was Muslim and it was Ramad[a]n so that was why he was refusing all his medication and pork." Shore also noted, "we have nothing from med. staff in the barracks saying [plaintiff] has signed any refusals." According to the report, Sgt. Rice notified the doctor, who would address the issue the following day. The report was copied to medical staff. Doc. Ent. 18-4 at 14.

Nearly three months later, on December 22, 2007, Stallworth informed Wickham that plaintiff's RBS was 413. Wickham contacted Burgess, who advised Wickham "that Inmate Johnson should be administered 5 additional units of 70/30 insulin." Wickham contacted Stallworth, "who supervised Johnson while he took his regular 10 units of 70/30 plus the additional 5 units advised by Dr. Burgess." A copy of the JIR was forwarded to the medical staff. Doc. Ent. 18-4 at 15.

Two days later, on December 24, 2007, Dep. Stallworth informed A/Sgt. B.A. Britton that plaintiff's RBS was 427. Britton contacted Dr. Trimas, who advised Britton "that Inmate Johnson should be administered 5 additional units of 70/30 insulin." Britton contacted Stallworth, "who supervised Johnson while he took his regular 10 units of 70/30 plus the additional 5 units advised by Dr[.] Trimas." A copy of the JIR was forwarded to the medical staff. Doc. Ent. 18-4 at 16.

On December 27, 2007, Deputies Burt, Kennedy and Welter reported that plaintiff had written on his medical sheets. The report indicates that "Johnson was asked . . . why he wrote on his sheets and he stated that the med staff was messing with him and that he was not taking his meds anymore." The JIR was forwarded to Lt. Carmoney and the medical staff, as were medical sheets and a kite from plaintiff. Doc. Ent. 18-4 at 17.

The final incident report attached to defendants' motion states that on December 30, 2007, plaintiff inquired of Sgt. Benson why plaintiff's evening snack had been removed by the medical staff.  On December 31, 2007, Benson asked the nurse, who said she was unaware plaintiff was not receiving an evening snack.  Benson contacted the kitchen, and a snack was being made for that evening.  At 5:50 p.m., Wickham informed Benson that "there [were] no medication sheets for Johnson in the barracks."  Benson reviewed the December 27, 2007 JIR, to which plaintiff's medication sheets were attached.  Benson directed Deputy M. Pratt to determine plaintiff's RBS, which was 477.  According to Benson, "Johnson advised that he ha[d] not had any medication since December 26, 2007."  Benson then called Burgess, who "advised to offer [plaintiff] 15 units of 70/30 insulin now and repeat twice a day."  The report indicates that medication was given.  Doc. Ent. 18-4 at 18.

To the extent that these reports specifically mention Burgess, and assuming the references to "Nancy" and "nurse" are attributable to Yirku and the references to "doctor" alone are attributable to Burgess, the reports do not support a conclusion that defendants acted with deliberate indifference to plaintiff's serious medical need.  Once again, I arrive at this recommendation without the benefit of a response by plaintiff.[16]

**g.**    Defendants also seek taxation of reasonable costs and attorney fees.  Doc. Ent. 18 at 4; *see also* Doc. Ent. 18 at 22.  Defendants' request for an assessment of costs and fees is premature.  Should the Court enter judgment in favor of defendants, they may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).  If

---

[16]If the Court agrees with this recommendation, then it should deny defendants' September 2nd motion to compel responses to interrogatories (Doc. Ent. 19) and September 5th motion to dismiss for failure to prosecute (Doc. Ent. 20) as moot.

defendants seek attorney fees pursuant to 42 U.S.C. § 1988, they should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

**4.      If the Court disagrees with the foregoing recommendation, then it should grant defendants' Rule 37(a)(5) motion to compel to the extent it seeks responses to the July 23, 2008 interrogatories.**

a.      In their September 2nd motion, defendants allege that without responses to their July 23, 2008 discovery requests, "[d]efendant will be severely prejudiced and unable to properly prepare its defense."  Doc. Ent. 19 at 1 ¶ 3.  Defendants seek "an Order requiring Plaintiff to produce answers to Defendant's First Set of Interrogatories to Plaintiff [served on July 23, 2008], forthwith."  Doc. Ent. 19 at 2, 4; Doc. Ent. 19-3.

Defendants' July 23, 2008 discovery requests consist of twenty-one (21) interrogatories. Doc. Ent. 19-3.  Fed. R. Civ. P. 33(b)(2) provides in part that "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories." According to defendants, plaintiff has not responded to their July 23, 2008 discovery requests. Doc. Ent. 19 at 1 ¶ 3.

Defendants are entitled to written responses to their interrogatories.  Assuming defendants served the discovery requests to plaintiff's last known address (as of July 23, 2008),[17] the period for timely filed responses to these interrogatories has clearly passed.  If the Court concludes that defendants' August 21st motion for summary judgement should not be granted, the Court should enter an order granting defendants' motion to compel to the extent it seeks responses to the July 23rd interrogatories.  Any such order should provide a date by which the

---

[17]Based on plaintiff's July 16, 2008 notice of address change, the Court assumes defendants served the July 23, 2008 discovery requests upon plaintiff at Project Rehab in Grand Rapids.  Doc. Ent. 17.

written responses shall be due and a reminder that plaintiff's responses should comply with Fed.

R. Civ. P. 33(b) ("Answers and Objections.").

**b.**     Additionally, defendants have sought "the payment of expenses, pursuant to [Fed. R. Civ.

P.] 37(a)(5)."  Doc. Ent. 19 at 2, 4.  This rule provides:

> (5) Payment of Expenses; Protective Orders.
>
> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.
>
> (B) *If the Motion Is Denied*. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.
>
> (C) *If the Motion Is Granted in Part and Denied in Part*. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5).  In light of plaintiff's pro se status, his incarceration, and his multiple

address changes (as discussed below), the Court should conclude here that "circumstances make

an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(iii).

26

**5.      If the Court disagrees with my recommendation that the Rule 56 motion should be granted, the Court should also deny defendants' Rule 41(b) motion to dismiss.**

**a.**      In their September 5th motion, defendants "request that this Honorable Court dismiss the present action for failure to prosecute, and for failure to inform the Court and the defendants about a current address for plaintiff, pursuant to [Fed. R. Civ. P.] 41(b)."  Doc. Ent. 20 at 3, 5.[18] In their September 15th supplement, defendants "renew their request [to] dismiss the instant action because of plaintiff's failure to prosecute and to provide the parties with a working address."  Doc. Ent. 21 at 2.

Fed. R. Civ. P. 41(b), which governs involuntary dismissal, provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits."

**b.**      To begin, plaintiff has not responded in a timely manner to any of the three pending motions.  Pursuant to E. D. Mich. LR 7.1, the deadline for a response to a dispositive motion, such as defendants' August 21, 2008 motion for summary disposition (Doc. Ent. 18) or defendants September 5, 2008 motion to dismiss (Doc. Ent. 20), "must be filed within 21 days after service of the motion."  E. D. Mich. LR 7.1(d)(1)(B).  The deadline for a response to a

---

[18]Defendants also rely upon E. D. Mich. LR 41.2, which provides that "[s]ubject to Fed. R. Civ. P. 23(e) and LR 81.1, when it appears that the court lacks subject matter jurisdiction or that the parties have taken no action for a reasonable time, the court may, on its own motion after reasonable notice or on application of a party, enter an order dismissing or remanding the case unless good cause is shown. An application for a continuance or pending discovery may not preclude a dismissal for failure to prosecute."  *See* Doc. Ent. 20 at 5.

nondispositive motion, such as defendants' September 2, 2008 motion to compel (Doc. Ent. 19), "must be filed within 14 days after service of the motion."  E. D. Mich. LR 7.1(d)(2)(B).

Service may be made by "mailing it to the person's last known address–in which event service is complete upon mailing[.]" Fed. R. Civ. P. 5(b)(2)(C).  Additionally, "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Fed. R. Civ. P. 6(d).  The proofs of service on these motions indicate that they were served by mail on the day they were filed.  Doc. Ent. 18 at 23; Doc. Ent. 19 at 5; Doc. Ent. 20 at 6.

Therefore, absent an order stating otherwise, plaintiff's response to the August 21st motion would have been due on October 14, 2008; plaintiff's response to the September 2nd motion to compel would have been due on September 19, 2008; and plaintiff's response to the September 5th motion would have been due on September 29, 2008.

As previously noted, my October 10, 2008 order set the response time for these motions for November 10, 2008.  Doc. Ent. 22.  The only document he has filed since defendants filed the aforementioned motions is plaintiff's November 14, 2008 notice of change of address (Doc. Ent. 23).  He has still not filed a response to any of the three pending motions

**c.**     Perhaps plaintiff's failure to respond to these outstanding motions in accordance with my October 10th order is that he did not receive it.  Of the eight (8) documents plaintiff has filed over the course of this lawsuit, five (5) were notices of change of address.

As previously noted, plaintiff was assigned to the Jackson County Jail (1995 Chanter Road, Jackson, MI 49201) in late January 2008 when he signed and filed his complaint.  Doc. Ent. 2.  The February 6, 2008 notice also provides an address of 1995 Chanter Road, Jackson,

28

MI 49201 (Doc. Ent. 6).[19]  The February 13, 2008 notice provides an address of 212 W. Wesley

Street (Lock No. 12-13), Jackson, MI 49201 - another address for the Jackson County Jail[20]

(Doc. Ent. 7).[21]  The March 27, 2008 notice provides a temporary address of 640 N. Cedar Street,

Mason, MI 48854 - the address for the Ingham County Jail[22] (Doc. Ent. 15).  The July 16, 2008

notice stated that in late May 2008 plaintiff was a ward of the M.D.O.C. in Ingham County;

noted that the MDOC placed him at Project Rehab on June 21, 2008; stated he would be there

---

[19]In this filing, plaintiff questions why he did not receive documentation of Burgess being served.  Doc. Ent. 6 at 1.  The U. S. Marshal acknowledged receipt of the documents for service on February 1, 2008.  Doc. Ent. 5.  Burgess's and Yirko's waivers of service were returned executed.  Doc. Entries 9 and 10.  Appearances of counsel were filed on behalf of defendants on March 6, 2008, copies of which were served upon plaintiff.  Doc. Entries 11 at 2 (Metzger) and 12 at 2 (Blankenship).

Also in the February 6th filing, plaintiff alleges that the Sheriff's Department "has been opening my legal mail from the U.S. Court without me being there.  And I don't know if documents are missing or being copied . . . without my permission.  If I must file another form to include Dr. Burgess please send me the proper form to do so."  Doc. Ent. 6 at 1.  This report assumes that the aforementioned description regarding service upon defendant Burgess satisfies plaintiff's concern.

Incidentally, the last line on the first page of this filing is illegible.  The Court assumes this is just the signature line.

[20]Apparently, both the Chanter Road and Wesley Street addresses are mailing addresses for the Jackson County Jail.  *See* http://www.jcsd1.org/jcsd/jail.htm.  In his February 13, 2008 filing, plaintiff claims his security level was increased to "max", because he filed this lawsuit.  Plaintiff claims that his transfer to the Wesley Street address was the result of the change in his security level.  Doc. Ent. 7 at 1.  Plaintiff's security level is currently "I".  *See* www.michigan.gov/corrections, "Offender Search."

[21]In his February 13, 2008 filing, plaintiff requested two more Prisoner Civil Rights Complaints.  Doc. Ent. 7 at 1.  Each of the defendants has been served in this case.  Therefore, the Court can only assume that plaintiff is seeking these items for other defendants or for another lawsuit.  In fact, plaintiff's July 16th filing states that he "intends to present a list of deputies from the county jail located in the City of Jackson where such act and violations occur[r]ed."  Doc. Ent. 17 at 2.  Whatever the case may be, such a request should be directed to the Clerk of the Court.

[22]*See* http://www.ingham.org/SH/index.htm.

until August 22, 2008; and provided an address of M.R.C., 200 Eastern Avenue, S.E., Grand

Rapids, MI 49503 - the address for Project Rehab, *see* www.whitepages.com (Doc. Ent. 17).

Finally, the November 14, 2008 notice provides an address of RGC (Lock 46-B-2N) and states

that his maximum discharge date is January 26, 2009 (Doc. Ent. 23).[23]

My October 10th order was likely mailed to Project Rehab, even though plaintiff's July

16, 2008 notice of address change stated he would only be there until August 22, 2008.  Doc.

Ent. 17.

**d.**      Perhaps plaintiff's failure to respond to the three pending motions is the result of his

failure to receive them.  Defendants served each of these motions upon plaintiff at the Project

Rehab address.  Doc. Ent. 20 at 2 ¶ 4 and Doc. Ent. 21-2.  However, at least two have been

returned as undeliverable.

The proof of service on defendants' motion for summary judgment is dated August 21,

2008.  Doc. Ent. 18 at 23; Doc Ent. 20-3.  Attached to defendants' September 5th Rule 41(b)

motion are copies of envelopes mailed to plaintiff apparently during August 2008 to the Project

Rehab address.  Presumably, these envelopes contained defendants' August 21, 2008 dispositive

motion (Doc. Ent. 18).  These were returned as undeliverable with "no forwarding order on

file[.]"  Doc. Ent. 20-4.

The proof of service on the motion to compel is dated September 2, 2008.  Doc. Ent. 19

at 5.  Defendants state that they mailed the motion to compel to the Project Rehab address, and

---

[23]The remaining two (2) documents plaintiff filed are his January 31, 2008 application to
proceed without prepayment of fees (Doc. Ent. 2), which Magistrate Judge Whalen granted on
February 1, 2008 (Doc. Ent. 3), and plaintiff's March 27, 2008 motion (Doc. Ent. 14), which I
denied on May 20, 2006 (Doc. Ent. 16).

they presume that it will be returned.  Doc. Ent. 20 at 2 ¶¶ 4-5.

Finally, the proof of service on the motion to dismiss is dated September 5, 2008.  Doc. Ent. 20 at 6.  Attached to defendants' September 15th supplement is a copy of a certified mail envelope postmarked September 5, 2008 and addressed to plaintiff at the Project Rehab address. Presumably, this envelope contained the September 5, 2008 motion to dismiss (Doc. Ent. 20).  It is marked "undeliverable as addressed - no forwarding order on file".  Doc. Ent. 21-2. Defendants claim it was returned as undeliverable on September 12, 2008.  Doc. Ent. 21 at 1 ¶ 2.


e.      Assuming plaintiff's failure to respond to the three pending motions is the result of not receiving the motions themselves or not receiving my October 10th scheduling order, the timing of plaintiff's address changes may be, at least in part, to blame.  This is because the filing dates of some of the notices of address change do not adequately correspond with the date of plaintiff's alleged location change.

For example, while it does not affect the motions presently pending before the Court, plaintiff's March 27th notice states that the MDOC was temporarily changing his address "for the next 60 days[.]"  Doc. Ent. 15.  If this address change to Cedar Street in Mason, MI, was to last approximately until the end of May, what was the Court or defense counsel to do at the end of that period - resort to the previous address (Wesley Street in Jackson, MI) or await a new address?[24]

---

[24]Plaintiff's March 27, 2008, motion (Doc. Ent. 14), filed concurrently with his March 27, 2008 change of address (Doc. Ent. 15), mentions his pending placement in another county by MDOC "to serv[e] sanctions for a parole violation[.]" Doc. Ent. 14.  The MDOC website indicates that plaintiff was "returned to prison for alleged parole violation[.]"

Not until July 16, 2008 did the Court receive notice that plaintiff's address had changed to Project Rehab, even though plaintiff had allegedly been there since June 21st. Furthermore, it said he would allegedly be there until August 22, 2008. Doc. Ent. 17 at 1. Here too, what was the Court or defense counsel to do on August 22nd - resort to the Cedar Street address or await a new address? As defendants pointed out in their September 5, 2008 motion to dismiss, "[p]laintiff is aware of the mechanism of how to submit a change of address form, and has done so in the past, but failed to do so since July, 16, 2008." Doc. Ent. 20 at 2 ¶ 7. Not until November 14th did the Court receive notice that plaintiff's address had changed to RGC. Doc. Ent. 23.

At the time of the August 21st, September 2nd and September 5th motions, Project Rehab was plaintiff's address of record. Doc. Ent. 17 (filed July 16, 2008) and Doc. Ent. 23 (filed November 14, 2008). Perhaps his failure to receive the August 21st motion for summary judgment was due to the fact that, as plaintiff anticipated in his July 16, 2008 notice of address change, plaintiff was to be at Project Rehab until August 22, 2008. Doc. Ent. 17. This is understandable considering that the motion was filed the day before plaintiff was allegedly going to leave Project Rehab.

However, the September 2nd and September 5th motions were filed after plaintiff claims he was scheduled to leave Project Rehab, but before plaintiff informed the Court of his new address. If plaintiff did not receive either the September 2nd motion to compel, the September 5th motion to dismiss, or my October 10th scheduling order, it may have been due to his delay in

32

informing the Court and/or defense counsel of his address change(s).[25]

**f.**     Defendants contend they "are hampered in their ability to defend this matter when their attempts to correspond with plaintiff are undeliverable, returned, or futile."  Doc. Ent. 21 at 2 ¶ 3.  With the timing of plaintiff's address changes in mind, it is appropriate to note that the Sixth Circuit considers "four factors in reviewing the decision of a district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc*., 420 F.3d 641, 643 (6th Cir. 2005) (citing *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).  *See also Mulbah v. Detroit Board of Education*, 261 F.3d 586, 589 (6th Cir. 2001) and *Knoll*, 176 F.3d at 363.

The Court should conclude that these factors do not weigh conclusively in favor of an involuntary dismissal.  To begin, satisfaction of the first factor is likely.  If, in fact, Johnson was at Project Rehab until August 22, 2008, then he should not have waited until November 14, 2008 to update the Court with his current address.  Therefore, setting aside the fact that defendant's August 21st motion was filed the day before plaintiff claims he was to be released from Project Rehab, the fault for the apparent return of the September 5th motion appears to fall upon plaintiff.  So too would the fault be upon plaintiff if he did not receive the September 2nd motion to compel, the September 15th supplemental brief or my October 10th order, because he did not give the

---

[25]This delay might explain why defendants' attempt at service of the September 5th motion was returned as undeliverable.

33

Court his post-Project Rehab (post-August 22nd) address until November 14th.

However, even though there is evidence of fault on plaintiff's part, he has not abandoned his case. This is evidenced by his recent (November 14, 2008) notice of address change (Doc. Ent. 23), and the claim in his July 16, 2008 notice of address change that he will pursue "this case to its end. With proper notice [he] can attend any hearing or trial by jury[.]" Doc. Ent. 17 at 1.

Furthermore, there has been no warning that plaintiff's failure to *timely* keep the Court and opposing counsel apprised of his address changes might result in dismissal, nor has there been the imposition or consideration of a sanction less severe than dismissal. However, as defendants point out, "[i]t is the responsibility of a litigant to keep the Court and the opposing side informed of the appropriate address in order to send correspondence and pleadings." Doc. Ent. 20 at 2 ¶ 6. Therefore, if the Court does not grant summary judgment to the defendants, it should enter an order denying defendants' motion to dismiss but providing that plaintiff update the Court with his addresses changes on a timely basis or risk dismissal of his lawsuit.[26]

## III.   **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir.

---

[26]I note that the November 14, 2008 filing states that plaintiff will be at the RGC address until January 26, 2009 (Doc. Ent. 23). Plaintiff is reminded to promptly communicate his new address to the Court and to defense counsel whenever RGC is no longer his address.

34

1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that

raise some issues but fail to raise others with specificity, will not preserve all the objections a

party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th

Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir.

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 2/3/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on February 3, 2009.

s/Eddrey Butts
Case Manager